UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

MARGARET MORTON LANGENBERG,          :

                     Plaintiff,          :

       - against -          :          **REPORT AND**
                                              **RECOMMENDATION**
ISAAC SOFAIR, Individually and as          :          **TO THE HONORABLE**
Custodian for OVED SOFAIR, DAYNA                       **KENNETH M. KARAS**
SOFAIR, and LAUREN A. SOFAIR; JOAN          :
SOFAIR, Individually and as Trustee for
OVED SOFAIR, DAYNA T. SOFAIR, and          :          03 Civ. 8339 (KMK)(FM)
LAUREN A. SOFAIR; LANDWAY
ESTATES, INC.; WILLIAM H. ADLER;          :
JAMES O. McKENNA; GS SECURITIES;
and GLENN FRIEDLY,          :

              Defendants.          :

--------------------------------------------------------x

**FRANK MAAS,** United States Magistrate Judge.

I.    Introduction

        In this action, plaintiff Margaret Morton Langenberg ("Langenberg")

alleges that defendant Isaac Sofair ("Sofair"), an investment advisor who conducted

business through defendant Landway Estates, Inc. ("Landway"), fraudulently induced her

to cede control of certain of her assets to him so that he could invest them in the securities

markets for her benefit.  Langenberg also initially named several other defendants,

alleging that they and Sofair were jointly and severally liable or that they had received assets fraudulently taken from her.

Langenberg subsequently discontinued this action as against defendants William H. Adler, GS Securities, and Glenn Friedly, and declined to proceed further against defendant James O. McKenna, who is deceased.  (Citron Aff. ¶ 8).  Additionally, on September 11, 2006, Your Honor granted the motion of Sofair's ex-wife, defendant Joan Sofair, to dismiss her from this action for lack of personal jurisdiction.  (Id.).

On May 24, 2006, following the failure of Sofair and Landway to answer or otherwise appear, Your Honor entered a default against them and directed me to conduct an inquest regarding the damages, if any, to be awarded to Langenberg.  (See Docket No. 42).[1]  Thereafter, by order dated June 26, 2006, as amended August 27, 2006, I directed Langenberg to serve papers setting forth her damages by September 29, 2006, with Sofair and Landway to respond by October 13, 2006.  (See Docket Nos. 45, 46).  Langenberg's papers were timely filed, but neither Sofair nor Landway has submitted any opposition papers.  This is scarcely surprising since Sofair, who is alleged to be the principal of Landway, has been indicted in this District on fraud charges arising out of his dealings

---

[1]    Your Honor's order directed that the inquest proceed with respect to Langenberg's first five claims for relief and that any assessment of damages against Sofair and Landway on the remaining fraudulent conveyance claim be held in abeyance pending the adjudication of Joan Sofair's motion to dismiss.  In light of the relief recommended below, the directive with respect to the sixth claim for relief appears to be moot.

with Langenberg and other investors and is currently a fugitive. (<u>See</u> Docket No. 47 (Op. & Order dated Sept. 11, 2006) at 2-3 n.3).

For the reasons set forth below, I recommend that Langenberg be awarded compensatory damages on her contract and breach of fiduciary duty claims in the amount of $2,373,066, plus prejudgment interest from February 15, 2001, at the rate of nine percent per annum; compensatory damages on her conversion claim in the amount of $30,000, plus prejudgment interest at the same rate from October 22, 2003; $1 million in punitive damages; and $9,754.65 in costs.

II.   <u>Standard of Review</u>

In light of Sofair's and Landway's default, Langenberg's well-pleaded allegations concerning issues other than damages must be accepted as true. <u>See</u> <u>Cotton v. Slone</u>, 4 F.3d 176, 181 (2d Cir. 1993); <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992); <u>Time Warner Cable of N.Y. City v. Barnes</u>, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998).

Additionally, although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim through the submission of evidence, the Court need not hold a hearing as long as it has (I) determined the proper rule for calculating damages on the claim, <u>see</u> <u>Credit Lyonnais Secs. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 155 (2d Cir. 1999), and (ii) the plaintiff's evidence establishes, with reasonable certainty,

the basis for the damages specified in the default judgment, see Transatlantic Marine

Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).

III.    Facts

        The unrefuted allegations in Langenberg's complaint, together with her

inquest papers, establish as follows:

    A.    Parties and Jurisdiction

        Langenberg is a resident of the State of New York.  (Compl. ¶ 7).  Sofair's

last known address is in the State of Maryland.  (Id. ¶ 8).  Landway is a Delaware

corporation with its principal place of business in the State of Maryland.  (Id. ¶ 16).  The

amount in controversy in this action exceeds $75,000.  (Id. ¶ 6).  The Court therefore has

jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

    B.    Background

        Langenberg first met Sofair in or around February 1997.  (Id. ¶ 24).  At the

time, Sofair falsely represented to Langenberg, among other things, that he was wealthy

and well-educated in financial matters, had extensive experience in the securities industry,

and was managing a $900,000,000 investment portfolio for his existing Landway clients,

including members of the royal family of Saudi Arabia.  (Id. ¶¶ 30-31).  To bolster these

claims, Sofair provided Langenberg with printed reports that he had prepared, which set

forth false information about his investment performance, the assets he managed, and his

securities holdings.  (Id. ¶ 32).

Over time, the relationship between Langenberg and Sofair became so close that she agreed to marry him, not knowing that he was married at the time.  (Id. ¶ 25). Langenberg also disclosed information to Sofair about her financial situation, including the existence of a large trust fund that had been established for her by her relatives.  (Id. ¶ 26).  Despite her wealth, Langenberg had "virtually no . . . investing experience." (Langenberg Decl. ¶ 4 n.1).  Accordingly, in or around September 1997, Langenberg agreed to allow Sofair to manage her investment portfolio.  (Compl. ¶ 35).  Langenberg also agreed to pay Sofair a fee for his services as an investment advisor in the event that the investments that he made were successful.  (Id. ¶ 37).

Between late 1997 and early 2001, Sofair opened several accounts with Fidelity Brokerage Services LLC ("Fidelity") on behalf of Langenberg.  (Id. ¶¶ 38-52). In total, Langenberg deposited $3,667,232 into these accounts, over which Sofair had trading authority.  (Id. ¶¶ 44, 47, 51, 95).  After the accounts were opened, Sofair engaged in an elaborate shell game, transferring funds among them and into another account in the name of Landway ("Landway Account").  (Id. ¶ 69).  Langenberg had no knowledge of the Landway Account or that Sofair was transferring her money into it.  (Id. ¶¶ 40, 42). Indeed, each time that Langenberg inquired about the status of her investment portfolio, Sofair falsely assured her that he was following a prudent investment strategy and was "making money" for her.  (Id. ¶ 93).

Sofair disbursed a total of $462,100 to Langenberg from the Fidelity accounts between late 1997 and early 2001.  (Lavin Aff. ¶ 27).  Moreover, $504,566

remained in those accounts when Langenberg terminated Sofair's authority to trade them in February 2001.  (<u>Id.</u> ¶ 28; Compl. ¶ 94).  As described in the affidavit of her counsel, Langenberg's losses also were further reduced by certain funds that she was able to recover elsewhere.  (<u>See</u> Citron Aff. ¶ 10 & n.3).  Thus, Langenberg lost approximately $2,700,566 as a result of Sofair's mismanagement, misappropriations and theft from her Fidelity accounts.  (Lavin Aff. ¶ 29).  In addition, Sofair stole gold coins with an estimated value of $30,000 from Langenberg.  (Compl. ¶ 96).

IV.    <u>Discussion</u>

　　　　　The first five claims in the complaint seek to recover damages on the theories that Sofair and Landway are liable to Langenberg for fraud, breach of fiduciary duty, conversion, breach of contract, and unjust enrichment.  For the reasons set forth below, I will discuss these claims in a slightly different order.

A.    <u>Breach of Contract</u>

　　　　　To state a claim for breach of contract under New York law, a plaintiff must allege:  (I) the existence of an agreement; (ii) the plaintiff's adequate performance of that agreement; (iii) a breach by the defendant; and (iv) damages.  <u>See</u> <u>Log On Am., Inc. v. Promethean Asset Mgmt. LLC</u>, 223 F. Supp. 2d 435, 451 (S.D.N.Y. 2001) (citing <u>Harsco Corp. v. Segui</u>, 91 F.3d 337, 338 (2d Cir. 1996)); <u>Johnson v. City of N.Y.</u>, No. 99 Civ. 165 (DAB), 2000 WL 377514, at *5 (S.D.N.Y. Apr. 12, 2000).  Here, the complaint alleges that Langenberg gave Sofair control and authority over her assets based on his agreement to manage her investment portfolio for her benefit in exchange for a fee.

(Compl. ¶¶ 35, 37).  According to the complaint, rather than doing so, Sofair breached the

contract by engaging in various improprieties, including the outright theft of her funds.

(Id. ¶ 117).  These allegations suffice to make out a breach of contract claim.

A plaintiff who establishes a breach of contract claim is entitled to recover

compensatory damages, i.e., an amount which will restore the plaintiff to the same

economic position she would have held but for the breach.  Topps Co. v. Cadbury Stani

S.A.I.C., 380 F. Supp. 2d 250, 261 (S.D.N.Y. 2005).  In this case, as noted above, those

damages amount to $2,373,066.[2]

B.    Fraud

To state a claim for common law fraud in New York, a plaintiff must show:

(I) a material representation or omission of fact; (ii) made with knowledge of its falsity;

(iii) with scienter or an intent to defraud; (iv) upon which the plaintiff reasonably relied;

and (v) that such reliance caused damage to the plaintiff.  See HealthExtras, Inc. v. SG

Cowen Secs. Corp., No. 02 Civ. 9613 (RO), 2004 WL 97699, at *1 (S.D.N.Y. Jan. 20,

2004); Morris v. Castle Rock Entm't, Inc., 246 F. Supp. 2d 290, 296 (S.D.N.Y. 2003);

Farey-Jones v. Buckingham, 132 F. Supp. 2d 92, 104-05 (E.D.N.Y. 2001).  Here, Sofair

made material misrepresentations to Langenberg regarding his personal, professional, and

educational background, as well as the reasons that he wished to control Langenberg's

_____

[2]     I base this number on the affidavit of Gregory Lavin, Langenberg's accounting
expert, rather than the slightly higher number set forth in her attorney's affidavit.  (Compare
Lavin Aff. ¶ 7 & n.3 with Citron Aff. ¶ 1).

investment portfolio.  Sofair made these representations knowing that they were false and

with the intent that Langenberg would rely on them and entrust him with control over her

assets.  Langenberg relied on Sofair's statements and, as a result, lost a substantial

amount of money.  She thus has established her claim of fraud.

        One critical difference between a breach of contract claim and a fraud claim

is that "[p]unitive damages are not recoverable for an ordinary breach of contract."

Topps Co., 380 F. Supp. 2d at 261 (quoting Rocanova v. Equitable Life Assurance Soc'y

of the U.S., 83 N.Y.2d 603, 613 (1994)).  Langenberg seeks such damages on her fraud

claim to punish the defendants for their outrageous conduct.  (See Pl.'s Mem. at 2-4).

Recognizing the Supreme Court's admonition in State Farm Mutual Automobile

Insurance Co. v. Campbell, 538 U.S. 408, 410 (2003), that punitive damages which are

"single digit" multiples of a compensatory award are "more likely to comport with due

process," Langenberg suggests that an award of punitive damages in the amount of $5

million is appropriate.

        Recently, in Jones v. Dana, No. 06 Civ. 159 (RPP), 2006 WL 1153358, at

*26 (S.D.N.Y. May 2, 2006), Judge Patterson was asked to make a punitive damages

award on the basis of remarkably similar facts.  There, the defendant befriended a

financially naive recent widow and told her a series of lies about the defendant's status as

a registered financial advisor and her past history of success.  Through means such as

these, the defendant eventually convinced the plaintiff to give her discretionary trading

authority over a substantial inheritance.  Before the fraudulent scheme was discovered,

the defendant was able to convert nearly $2.2 million of the plaintiff's funds to her own use.  Because the defendants' efforts to steal money from a recent widow (and her disabled son) were so egregious, Judge Patterson awarded the plaintiff punitive damages in the amount of $1 million.  In the course of doing so, Judge Patterson concluded that punitive damages were allowable when a "very high threshold of moral culpability is satisfied" without any need to show "that the fraud was aimed at the public generally." See id. (citing V.J.V. Transport Corp. v. Santiago, 570 N.Y.S.2d 138, 138-39 (2d Dep't 1991), and Borkowski v. Borkowski, 39 N.Y.2d 982, 983 (1976)).

        The Jones decision did not cite or discuss the 1994 decision of the New York Court of Appeals in Rocanova.  In that case, the court held that punitive damages are available in a breach of contract action when the plaintiff is able to "not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of criminal conduct directed at the public generally." Rocanova, 83 N.Y.2d at 613.  Nonetheless, the showing of a public wrong that Rocanova indicated is necessary need not be shown when a tort claim does not "arise from" a contractual relationship.  See Topps, 380 F. Supp. 2d at 264 (citing Borkowski, 39 N.Y.2d at 982); see also Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389 (1987) ("[A] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated . . . .  This legal duty must spring

from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected and dependent upon the contract.").

Here, Langenberg's fraud claim is, at least in part, a fraudulent inducement claim, which has been described as a "particular species of fraud [that] combines both contract and tort law concepts and is at the juncture point of contract and tort law."[3] Topps, 380 F. Supp. 2d at 265 (quotation marks and brackets omitted). In Topps, Judge Haight found that the plaintiff had to meet the public wrong requirement of Rocanova to obtain a punitive damages award because its fraudulent inducement claim arose from a "long-standing relationship between the parties." Id. at 266. By comparison, in this case there was no such prior relationship between Langenberg and Sofair. In fact, there was no contractual relationship whatsoever until Langenberg had been fraudulently induced to enter into one.

For this reason, Langenberg may recover punitive damages without establishing a public wrong. Even if that were a requirement, however, Langenberg would be able to satisfy it. As the indictment against Sofair indicates, Langenberg was not the only person to whom Sofair told lies as part of his investment fraud scheme. In

---

[3]       The elements of a fraudulent inducement claim under New York law are:  (i) a representation of material fact; (ii) which was untrue; (iii) which was known to be untrue or made with reckless disregard for the truth; (iv) which was offered to deceive another or induce him to act; and (v) which that other party relied on to its injury.  See Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 580 (2d Cir. 2005); Helmsley-Spear v. Westdeusche Landesbank Girozentrale, 692 F. Supp. 194, 203 (S.D.N.Y. 1988) (citing Jo Ann Homes at Bellmore v. Dworetz, 25 N.Y.2d 112, 119 (1969)).

fact, Sofair is alleged to have made numerous false statements in filings with the

Securities and Exchange Commission and Landway promotional materials, including a

Landway website.  The indictment further alleges that through these means, he and

Landway were able to defraud "at least approximately 10 investors" out of "$4.7 million

worth of cash and securities."  (See Langenberg Aff. Ex. A ¶ 5).  This is sufficient to

establish a public wrong.

       Turning to the quantum of punitive damages to be awarded, in Jones the

defendant investment advisor committed a similar fraud which caused an equally

sympathetic plaintiff to sustain virtually identical financial losses.  Based on that conduct,

Judge Patterson exercised his discretion to award punitive damages in the amount of $1

million.  Given the numerous similarities between this case and Jones, I recommend that

Langenberg be awarded the same sum here as punitive damages.

       C.     Breach of Fiduciary Duty

       Under New York law, to state a claim for breach of a fiduciary duty, a

plaintiff must show that:  (I) the parties had a fiduciary relationship and (ii) the fiduciary

duty has been breached.  See Slue v. N.Y. Univ. Med. Ctr., 409 F. Supp. 2d 349, 373

(S.D.N.Y. 2006); Cramer v. Devon Group, Inc., 774 F. Supp. 176, 184 (S.D.N.Y. 1991).

"A fiduciary relationship arises when one has reposed trust or confidence in the integrity

or fidelity on another who thereby gains a resulting superiority of influence over the first,

or when one assumes control and responsibility over another."  Fraternity Fund Ltd. v.

Beacon Hill Asset Mgmt. LLC, 376 F. Supp. 2d 385, 413-14 (S.D.N.Y. 2005) (quoting

Reuben H. Donnelley Corp. v. Mark I Mktg. Corp., 893 F. Supp. 285, 289 (S.D.N.Y.

1995)).

   Applying this standard, the New York courts have concluded that securities

brokers who simply execute trades owe no fiduciary duty to their clients.  See, e.g.,  Ascot

Fund Ltd. v. UBS PaineWebber, Inc., 814 N.Y.S.2d 36 (1st Dep't 2006) (affirming

dismissal of fiduciary duty claim where defendant did not provide any investment advice

or have discretionary trading authority); Fesseha v. TD Waterhouse Inv. Servs., Inc., 761

N.Y.S.2d 22, 24 (1st Dep't 2003) ("The claim for breach of fiduciary duty was properly

dismissed since plaintiff opened a non-discretionary account, and the relationship

between plaintiff and defendant was merely that of broker and customer.").

Notwithstanding this rule, there unquestionably was a relationship of trust and confidence

here.  Indeed, Langenberg essentially ceded control over a portion of her holdings to

Sofair.  In such circumstances, there plainly is a basis for a breach of fiduciary duty claim.

See Jones, 2006 WL 1153358, at *28.  Langenberg therefore is entitled to recover "the

amount of the loss sustained, including lost opportunities for profit," and punitive

damages.  Id. at *28-29 (citing Giblin v. Murphy, 73 N.Y.2d 769, 772 (1988); Duane

Jones Co. v. Burke, 306 N.Y. 172, 190-91 (1954)).  In the absence of any showing with

respect to lost profits, Langenberg therefore should be awarded the same $2,373,066 in

compensatory damages and $1 million in punitive damages on this claim.

D.      Conversion

In her third claim for relief, Langenberg alleges that Sofair converted to his own use the contents of one of her Fidelity accounts, as well as gold coins with a value of approximately $30,000.  (Compl. ¶¶ 109-14).

"Conversion is the unauthorized and wrongful exercise of dominion and control over another's personal property."  Phansalkar v. Andersen Weinroth & Co., L.P., 175 F. Supp. 2d 635, 639 (S.D.N.Y. 2001) (internal citation and quotations omitted).  The general rule in New York is that "a claim for conversion does not lie for the withholding of indefinite, intangible, and incorporeal species of property."  Id. (quoting Matzan v. Eastman Kodak Co., 521 N.Y.S.2d 917, 918 (4th Dep't 1987)).  Nevertheless, a conversion action for money will lie under New York law "where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific money in question."  Mfr. Hanover Trust Co. v. Chem. Bank, 559 N.Y.S.2d 704, 712 (1st Dep't 1990); accord LoPresti v. Terwilliger, 126 F.3d 34, 41-42 (2d Cir. 1997) (internal citation and quotations omitted).

The contents of the Fidelity account arguably qualify as such a specific identifiable fund.  However, "[f]or a conversion claim to succeed in the context of a dispute regarding a contract, the breach of contract must result in some wrong that is separately actionable."  In re MarketXT Holdings Corp., No. 04-12078 (ALG), 2006 WL 2864963, at *22 (Bankr. S.D.N.Y. Sept. 29, 2006) (internal citation and quotations

omitted).  Accordingly, because Langenberg's conversion claim with respect to her Fidelity funds arises out of the same conduct as her contract claim, her conversion claim necessarily fails insofar as it is based on the theft of any funds in her Fidelity accounts.

Langenberg also alleges that Sofair stole approximately $30,000 worth of gold coins from her.  This claim is unrelated to her contract claim and consequently states a basis on which she is entitled to relief.  Accordingly, Langenberg should be awarded $30,000 on her conversion claim.  In view of the relatively small amount of this claim and the dearth of any factual detail in her complaint or affidavit with respect to it, Langenberg should not be awarded any punitive damages for the loss of her coins.

E.    Unjust Enrichment

The last claim that Langenberg seeks to pursue at this time alleges that Sofair and Landway were unjustly enriched.  (Compl. ¶¶ 120-24).  An unjust enrichment claim does not require a showing of wrongdoing on the part of the person enriched.  ESI, Inc. v. Coastal Power Prod. Co., 995 F. Supp. 419, 436 (S.D.N.Y. 1998).  To establish a claim for unjust enrichment under New York law, a plaintiff therefore need only show that:  (I) the defendant was enriched; (ii) at the plaintiff's expense; and (iii) under circumstances in which "equity and good conscience" require the defendant to make restitution.  Kidz Cloz, Inc. v. Officially For Kids, Inc., 320 F. Supp. 2d 164, 177 (S.D.N.Y. 2004) (quoting Astor Holdings, Inc. v. Roski, No. 01 Civ. 1905 (GEL), 2002 WL 72936, at *17 (S.D.N.Y. Jan. 17, 2002)).

Despite the relatively limited showing that need be made, it is settled law that "unjust enrichment is a quasi-contractual doctrine that applies only in the absence of a valid and enforceable contract." ESI, Inc., 995 F. Supp at 436 (citing In re Chateaugay Corp., 10 F.3d 944, 958 (2nd Cir. 1993); Clark-Fitzpatrick, 70 N.Y.2d at 388).  Although there is authority suggesting that the contract in question must be written if it is to bar a quasi-contractual claim, even if Langenberg were able to proceed in quasi-contract, her damages on that claim would be the same as those to which she is entitled on her contract claim because she has not shown that Sofair used her funds to generate any additional profits for himself or others which rightfully should be hers.  Accordingly, Langenberg is not entitled to any additional damages on her quasi-contract claim.

F.    Prejudgment Interest

Under New York Law, the party prevailing in a breach of contract action is entitled to prejudgment interest from the date that the breach occurred until the date of final judgment.  N.Y. C.P.L.R. ("CPLR") 5001, 5002 (McKinney 1992); U.S. Naval Inst. v. Charter Commc'ns, Inc., 936 F.2d 692, 698 (2d Cir. 1991).  The statutory rate for such prejudgment interest is nine percent per annum.  CPLR 5004 (McKinney 1992); Chaman LAL Setia Exp., Ltd. v. Sawhney, No. 00 Civ. 2838 (MBM), 2003 WL 21649652, at *4 (S.D.N.Y. May 28, 2003).

In this case, Langenberg alleges that her contract cause of action arose in February 2001, when she "directed Fidelity to remove Sofair's authority from her

accounts and regained control of what remained of her assets."  (See Citron Aff. ¶ 12(a)).

In fact, her contract claim likely accrued (at least in part) at an earlier date because Sofair

was stealing funds from her accounts as early as December 17, 1997.  (See Lavin Aff.

¶ 18).  Given his continuing misconduct, February 2001 is a reasonable – indeed, a

generous – starting date for the calculation of prejudgment interest.

         As Langenberg notes, she was able to recover certain sums of money from

other sources during the pendency of this action – that is, after October 2003.  Although

she suggests that it might be appropriate to credit Sofair and Landway for these offsets in

calculating interest, because Sofair began to misappropriate money from her in 1997, she

probably would be entitled to recover prejudgment interest on at least some of her losses

far earlier than February 2001.  Under New York law, when "damages were incurred at

various times," interest may be "computed upon each item from the date it was incurred

or upon all of the damages from a single reasonable intermediate date."  See CPLR

5001(b) (emphasis added); see also City of N.Y. v. Coastal Oil N.Y., Inc., 96 Civ. 8667

(RPP), 2000 WL 648365, *2 (S.D.N.Y. May 18, 2000) (setting reasonable intermediate

date as February 15, 1993 where plaintiff had overpaid for deliveries between October

1992 and 1993); Oy Saimaa Lines Logistics Ltd. v. Mozaica-N.Y., Inc., 193 F.R.D. 87,

91 (E.D.N.Y. 2000) (calculating prejudgment interest from the midpoint of the

outstanding invoices); Robert Half Int'l, Inc. v. Jack Valentine, Inc., 596 N.Y.S.2d 955,

958 (Civ. Ct. N.Y. County 1993) (same).  Here, I find that February 2001 is such a

reasonable intermediate date.  Moreover, because the use of that date is actually favorable to the defendants, I recommend that prejudgment interest on Langenberg's securities losses be calculated at the rate of nine percent per annum from February 15, 2001 (the midpoint of the month), on the entire amount of Langenberg's compensatory damages ($2,373,066) without taking into account the payments received after this suit was filed.

Langenberg also sustained a $30,000 loss as a result of the theft of her coins.  Unfortunately, neither her complaint nor her inquest papers indicate when this loss occurred.  For this reason, I recommend that prejudgment interest on this aspect of her damages run from October 22, 2003, the date that this action was filed.  See CLPR 5001(a), (b).

G.   Costs and Expenses

Finally, Langenberg seeks to be awarded costs in the amount of $54,785.89. The breakdown of these costs, which is set forth in the affidavit of her attorney, is as follows:

> (I) $3,140.50 for photocopying; (ii) $2,499.28 for outside duplication services; (iii) $1,069.86 for telephone charges; (iv) $764 for facsimile charges; (v) $101.56 for postage; (vi) $162.14 for travel expenses; (vii) $725.81 for "miscellaneous expenses," including payments to an assistant that helped catalogue checks written by Sofair against Langenberg's Fidelity accounts; (viii) $4,339.65 for "third party professional services," including payments to an English law firm that assisted Langenberg's counsel in locating Sofair in England; (ix) $150 for a filing fee with the United States District Court; (x) $5,798.34 for costs of service, including use of the Demovsky Lawyer Service, a process server and

> document retrieval firm; (xi) $5,265 for investigative services,
> including payments made to private investigators that assisted
> in locating Sofair in the United States and England; (xii)
> $769.75 in court tracking fees; and (xiii) $30,000 for the
> services of an expert accountant.

(Citron Aff. ¶¶ 15-17).  Langenberg also somewhat cryptically notes that her complaint

seeks an award of attorney's fees – which she indicates have already risen to nearly

$300,000 – although she recognizes that "under the so-called 'American Rule' an award

of attorney's fees in this action is neither specifically authorized by statute nor compelled

by any agreement."  (Id. at 7 n.4).

When neither a contractual provision nor a statute authorizes an attorney's

fee award, the costs that properly may be taxed by the prevailing party are those set forth

in 28 U.S.C. § 1920 ("Section 1920"), Federal Rule of Civil Procedure 54(d), and Local

Civil Rule 54.1.  See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445

(1987) ("absent explicit statutory or contractual authorization for the taxation of the

expenses of a litigant's witness as costs, federal courts are bound by the limitations set out

in [Section 1920]"); Laura B. Bartell, Taxation of Costs and Awards of Expenses in

Federal Court, 101 F.R.D. 553, 590 (1984) ("If the case provides no basis for an award of

attorneys' fees in addition to costs, courts uniformly reject an award of 'expenses' in

addition to the statutory costs to a prevailing party.").  Those provisions establish that

most of the costs for which Langenberg seeks reimbursement are not properly taxable.

Others are insufficiently documented.

The cost of copies may be taxed when they are copies of exhibits that were introduced into evidence or used in connection with motion papers.  Here, it is evident that Langenberg did not incur $5,639.78 ($3,140.50 + $2,499.28) in copying or duplication costs related to the application for a default judgment or the inquest. Moreover, from the plaintiff's submission, there is no way to determine what copying costs were reasonably incurred in the course of preparing those papers.  Accordingly, these items must be disallowed.

Neither Section 1920 nor the rules thereunder permits a party to recover as a taxable cost any amounts expended for telephone charges, facsimile charges, postage unrelated to the cost of service, travel or "miscellaneous" expenses, third-party professional services, or court docket tracking fees.  Additionally, while there are circumstances in which the fees of expert witnesses may be taxable, unless "prior court approval was obtained," a prevailing party may only recover the witness fee that the expert would be entitled to if he were an ordinary witness.  See Local Civ. R. 54.1(c)(3). Here, because there is no suggestion that the use of an expert accountant was approved by the Court before he was retained, or that he ever appeared anywhere to testify, the $30,000 expense for accounting services is not taxable.

On the other hand, costs associated with service of process are ordinarily taxable.  See Local Civ. R. 54.1(c)(10).  Here, Langenberg paid $4,339.65 to Clyde & Co. for assistance in locating and serving Sofair in the United Kingdom, and a total of $5,265

19

to Dennis March and William Kish, Inc., in connection with failed attempts to locate him in the United States. I find that these costs are recoverable.

Finally, Langenberg is entitled to recover the $150 fee associated with the filing of this action.

In sum, Langenberg should be awarded costs in the amount of $9,754.65 ($4,339.65 + $5,265 + $150).

V.     Conclusion

For the reasons set forth above, I recommend Margaret Morton Langenberg be awarded compensatory damages on her contract and breach of fiduciary duty claims in the amount of $2,373,066, plus prejudgment interest on this amount from February 15, 2001, at the rate of nine percent per annum; compensatory damages on her conversion claim in the amount of $30,000, plus prejudgment interest on this amount at the same rate from October 22, 2003; punitive damages on her fraud and breach of fiduciary duty claims in the amount of $1 million; and costs in the amount of $9,754.65.

VI.    Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable Kenneth M. Karas, United States District Judge, and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, New York,

10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e),

72(b). Any requests for an extension of time for filing objections must be directed to

Judge Karas. The failure to file timely objections will result in a waiver of those

objections for the purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); 28

U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).

Dated:      New York, New York
            November 9, 2006


                                        FRANK MAAS
                                    United States Magistrate Judge



Copies to:

Hon. Kenneth M. Karas
United States District Judge

Kenneth E. Citron, Esq.
Snow, Becker, Krauss, P.C.
(212) 949-7052 (fax)

Isaac Sofair
c/o Odette Marshall
16 Pont Street, Flat #1
London, England SW1X 9EN